**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| MARCUS FASHAW, )<br>)<br>) CIVIL ACTION NO. 3:08-1766-PMD-JRM<br>Petitioner, )<br>)<br>) **AMENDED**<br>v. ) **REPORT AND RECOMMENDATION**<br>)<br>JON OZMINT, SCDC; STATE OF )<br>SOUTH CAROLINA, MCKITHER )<br>BODISON, Warden of )<br>Lieber Correctional Institution, )<br>)<br>Respondents. )<br>_____) | |

Petitioner, Marcus Fashaw ("Fashaw"), is an inmate with the South Carolina Department of Corrections serving a sentence of twenty-six (26) years imprisonment for armed robbery. On May 5, 2008, Fashaw filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C). Respondents filed a motion for summary judgment on September 5, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on September 8, 2008. Fashaw filed his response to the motion for summary judgment on October 15, 2008.

**Background and Procedural History**

During the early morning hours of June 11, 2002, two masked gunmen robbed the Kwik-Fill convenience store in Cheraw (Chesterfield County), South Carolina. Investigation led to Aven Sellers ("Sellers"). Sellers gave a statement in which he admitted robbing the Kwik-Fill and

1

identified Fashaw as his accomplice. Both were arrested. Sellers negotiated a plea to the charge, as well as another charge, and pled guilty in September of 2002.[1] Fashaw proceeded to trial in June of 2003. He was represented by Larry Wayne Knox, Esquire. The main evidence against Fashaw was the testimony of Sellers which was corroborated by other evidence in certain respects. The jury found Fashaw guilty and he was sentenced to twenty-six (26) years imprisonment.

A direct appeal was perfected by the South Carolina Office of Appellate Defense which submitted an Anders[2] brief rasing the following issue:

> Whether the trial court erred in refusing to suppress evidence seized from Mary Sellers' apartment when Charlotte Sellers did not have the authority to consent to search?

Fashaw submitted a *pro se* brief asserting that the trial court lacked subject matter jurisdiction because the indictment did not sufficiently charge accomplice liability. The South Carolina Court of Appeals dismissed the appeal. *See* State v. Fashaw, Op.No. 2004-UP-451 (S.C.Ct. App. filed August 25, 2004). The Remittitur was returned on September 27, 2004.

Fashaw filed an application for post-conviction relief ("PCR") on December 8, 2004. (App. 517). An evidentiary hearing was held on August 8 and August 12, 2005. (App. 571). Burnie W. Ballard, Esquire represented Fashaw. The PCR Court issued an order of dismissal on September 26, 2005. (App. 715).

A petition for writ of certiorari was filed in the South Carolina Supreme Court by the South Carolina Commission on Indigent Defense raising the following issue:

---

[1] Sellers received an indeterminate sentence not to exceed six (6) years imprisonment under the South Carolina Youthful Offenders Act ("YOA").

[2] Anders v. California, 386 U.S. 738 (1967).

2

>   Whether defense counsel was ineffective in failing to request a jury instruction limiting the effect of the co-defendant's guilty plea so as not to be considered as evidence of petitioner's guilt?

The petition for writ of certiorari was granted on July 19, 2007. The parties submitted briefs. On January 28, 2008, the South Carolina Supreme Court dismissed the petition for writ of certiorari as improvidently granted.

## **Grounds for Relief**

**Ground One:**       Ineffective assistance of counsel

**Supporting Facts:**       Whether defense counsel was ineffective in failing to request a jury instruction limiting the effect of the co-defendant's guilty plea so as not to be considered as evidence of petitioner's guilt?

**Ground Two:**       Ineffective assistance of counsel

**Supporting Facts:**       Counsel failed to call alibi witness.

**Ground Three:**       Ineffective assistance of counsel

**Supporting Facts:**       Failed to investigate the Applicant's criminal history.

Failed to object to the indictment.

Failed to object to admission of evidence.

Failed to have a DNA test conducted.

E. Failed to object to denial of motion for directed verdict.

Failed to object to improper comments made by the solicitor.

**Ground Four:**     Ineffective Assistance of Counsel

**Supporting Facts:**     Failed to object to hearsay.

Ineffective assistance of appellate counsel.

Trial court lacked subject matter jurisdiction.

Appellate court lacked subject matter jurisdiction.

## **Discussion**

Respondents concede that Fashaw's first claim of ineffective assistance of counsel, i.e., the failure to request a jury instruction limiting the effect of the Sellers guilty plea so as not to be considered as evidence of his (Fashaw's) guilt, was properly exhausted because it was raised in the petition for writ of certiorari following denial of the PCR. Respondents argue that other grounds for relief asserted by Fashaw are procedurally barred because they were not raised on direct appeal or included in the petition for writ of certiorari.

**A. Ineffective Assistance of Trial Counsel.**

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney

performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

The State called Sellers as one of its final witnesses. At the beginning of his testimony, the Solicitor asked Sellers if he had previously pled guilty to the robbery and an unrelated burglary charge. Sellers confirmed the guilty pleas. (App. 332-333). He then detailed the robbery of the

Kwik-Fill including the involvement of Fashaw.

Trial counsel, Mr. Knox, thoroughly cross-examined Sellers. Specifically, Mr. Knox got Sellers to concede that his plea bargain was a "blessed" deal and that his YOA sentence for which he would likely serve only ten (10) months was inappropriate for his crimes. (App. 384-386). Mr. Knox followed up with a closing argument that Sellers testimony was not credible because it had been bought with a "sweet deal" - "You give us Fashaw. We'll give you ten months." (App. 459).

At the PCR hearing, Fashaw's attorney asked Mr. Knox if he thought it would have been useful to have requested a limiting jury instruction that the jury should not consider Sellers' confession or his guilty plea as evidence of Fashaw's guilt. Mr. Knox responded, "No". (App. 618). The PCR court addressed this issue briefly and found that Fashaw "failed to set forth any cognizable reason to support his claim that trial counsel was ineffective in his failure" to request such a jury instruction or to object to the court's charge. (App. 721). The PCR court found that Mr. Knox committed no error under Strickland.

As noted above, Fashaw raised this issue in his petition for writ of certiorari. He cited primarily two state cases, neither of which were on point. In State v. Brown, 306 S.C. 448, 412 S.E. 2d 440 (S.C.Ct.App. 1991), the conviction of a defendant was reversed where the State introduced evidence in the trial of a "go between" in a drug transaction that another person had pled guilty to supplying the "go between." The person who had pled guilty did not testify. In State v. Moore, 337 S.C. 104, 522 S.E.2d 354 (S.C.Ct.App. 1999), the defendant, the driver of a vehicle, attempted to introduce evidence that the passengers in the vehicle had pled guilty to possessing the contraband seized in the search of the vehicle supporting the driver's "mere presence" defense. The trial court refused to admit the evidence and the South Carolina Court of Appeals found no error holding

6

"(g)uilty pleas of a co-defendants are not relevant to or admissible as substantial evidence of a defendant's guilt or innocence." *Id.* at 108-109.

The cases cited by Fashaw involve the admission of the guilty pleas of non-testifying co-defendants as substantive evidence of the guilt of the defendant on trial. On the other hand, Sellers testified at Fashaw's trial and his convictions were clearly admissible for impeachment purposes pursuant to Rule 609, S.C.R.Evid.[3] Fashaw has cited no authority to support his argument, nor has he suggested a proposed jury instruction that could have been offered.

The undersigned concludes that the PCR court's application of the Strickland test was not unreasonable or contrary to existing law.

**B. Procedural Bar.**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.     Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in

---

[3] Under this South Carolina rule, the probative value of the evidence must be balanced against the probative effect only with respect to the accused when he is a witness at trial. Thus, no balancing test applied to Seller's testimony.

7

> custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his

conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

9

relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

### 2.     Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

---

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson,

501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

Even though some of the other grounds now argued by Fashaw were included in his PCR and addressed by the PCR court, none of them were raised on appeal. Fashaw does not argue his remaining grounds for relief in his Roseboro response, nor does he attempt to establish cause for his failure to raise these grounds in his petition for writ of certiorari or actual prejudice from the failure to review these grounds. Therefore, the undersigned concludes that Fashaw has abandoned his remaining claims, they are not properly before the Court, and they should not be considered.

13

**Conclusion**

Based on a review of the record, it is recommended that Respondents' motion for summary judgment be **granted** and the petition **dismissed**.

_____
Joseph R. McCrorey
United States Magistrate Judge

March 11, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).